for argument this morning. The first case, number 21-1672, is Kern v. Police Chief Daniel Contento. Mr. Nelson, you may proceed. Good morning, Your Honors. May it please the Court. I am from the Law Office of Michael Joseph in White Plains, New York. I represent Ms. Kern, who is the administrator of the estate of Riley Kern. Ms. Kern is a citizen of the state of Kansas. Her son died in a motor vehicle accident in Ravina, New York, in July of 2018. The issue presented to the Court this morning is whether Ms. Kern had a constitutionally protected interest that barred defendant-respondent police officers from covering up evidence, fabricating information on a police report, failing to carry out a required police investigation, and failing to perform mandatory field sobriety testing, all for the purpose of protecting a local individual and a local dram shop from liability for the wrongful death of her son. Plaintiffs brought three causes of action in the Northern District of New York against the police officers and the town of Coymans. One was that she had a constitutionally protected interest in field sobriety testing pursuant to the vehicle and traffic law. Another was that the police officers violated her constitutionally protected right of access to the courts. And another is a Monell claim. Just briefly regarding the facts of the accident, the defendants... Mr. Nelson, I think we're pretty aware of the facts of the accident. It was a terrible tragedy, and my heart went out to Ms. Kern reading about what had happened. But it seems to me that from a legal perspective, you have a very difficult burden to carry here in light of Castle Rock. What we're talking about really is the constitutionalization, or not, of police investigative failures, even in the face of statutes that look like they have some mandatory language, but in which police retain a fair amount of discretion. For example, here, even with a revision of VTL 603A, the police had first to determine whether there were reasonable grounds to believe that a driver committed a serious traffic violation. In that case, if they find such grounds, then they have an obligation to request a sobriety test. It seems that many investigative mistakes were made here, but in case after case, we have declined in light of Castle Rock to find that an individual has a constitutional entitlement for purposes of due process clause to require a non-negligent and to enforce a state statute like this. How do you overcome that burden? What I would argue is that Castle Rock looked to see whether the benefit that the plaintiff was claiming was something that by police officers and was a regular law enforcement activity, as was enforcing a restraining order. This case today is very different because the New York State Legislature recognized that a new governmental service was needed. The district court also cited to Castle Rock and said that the service that was denied the plaintiff was a traditional service that governments provide. Let me interrupt for just a second, though. I mean, first of all, in Castle Rock, they talked about domestic violence and placed an obligation on the officers to enforce protective orders. Also, when you refer to an entitlement, there was no individual entitlement that was enacted by the state legislature. It was kind of a public benefit. They didn't create a cause of action. That's just the point. That's why there's a due process concern. The only way for the legislative effect of this mandatory sobriety testing to have any teeth or to have any effect in the state of New York would be for your honors to find that it's a constitutionally protected interest. But if I may, just to respond to your points, that one, I mean, you know, pursuant to Castle Rock and Harrington, there are two things. One is, was it mandatory? Did the legislature intend it to be mandatory? I don't think there could be any question that the name of the statute is mandatory. The sponsor's memorandum states that it's mandatory. And then regarding whether it was a benefit to individuals, the sponsor memorandum also indicates that the purpose was to allow people the greater enforcement of New York's driving while intoxicated laws. New York's driving while intoxicated laws permit parties to bring a cause of action for compensatory impunitive damages. And what happened in Harrington and Stevens was there was no right. The second circuit, I mean, the district court and second circuit in those cases dismissed the cases. But New York in response to that went and passed this law. But Mr. Nelson, excuse me, Mr. Nelson, we're talking about whether there's a constitutional entitlement. Yes. And for due has held that you need an individual right. And that an entitlement that doesn't have a discretionary aspect to it. If the state legislature had wanted to provide teeth of the type that you're talking about, couldn't it have provided for a cause of action against the police force for failing to conduct mandatory? That's what gives it if it had provided for that, there wouldn't be a due process concern. The due process concern is there was the legislature didn't provide for that. And it's that failure that the legislature, in other words, it created this benefit. And we have we have three causes of action. So I don't want to I also want to address the right of access to the court and answer any questions that the court may have regarding flexibility on timing. Oh, thank you so much. OK, so getting back to the procedural due issue, the the benefit here, the legislature, if you look at the legislative history, let's take a look at what the legislature said. And I think we have that in your in your briefs, you know, I know that you're you've reduced some, you know, statements by the governor and statement by the in the context of the legislating. Right. So but I think that's important because what because what it is is that the New York legislature recognized that there was a need, you know, for people to hold drunk drivers accountable. The legislature recognized there was a need to provide a mechanism that existing laws did not provide that mechanism and existing law enforcement, traditional activities of law enforcement were not providing that benefit that which it decided the public needed. So what indication is there in the statute that they envisioned an individual right to enforce the statute by their language, that they were enacting a mechanism so that people can enforce the drunk driving laws? That's exactly what it's the sponsor's memorandum states both elements, one that it's mandatory, the two elements that Castle Rock states, and that Harrington states, one, it's mandatory, and two, that it provides a mechanism for greater enforcement of New York's drunk driving laws, New York driving laws expressly provide cause of action to persons seriously injured or killed for compensatory and punitive damages. It's right there. That's why didn't you? Why didn't you take another two minutes and talk about the right of the backward-looking claim? Okay, sure. So the backward-looking claim, first of all, I think the Second Circuit has not affirmatively recognized that the Second Circuit should recognize that because I think it goes without saying that having a right to go to court to litigate a claim is meaningless unless you also have a right to the evidence that supports the as the Sixth and Seventh Circuit said that giving a person a right access to the court while allowing officers to destroy the evidence crucial to the case is a meaningless right. The Seventh Circuit had similar language that unless police officers effectively cover up evidence, that action renders a state court remedy ineffective. Is there a maliciousness element to a right of access claim? Absolutely. So how have you alleged that? We've alleged that because we've plausibly alleged that because the narrative on the police report was falsified. It was attributed to a witness that did not actually witness the incident. There was not one police photograph taken in the age of iPhones in the days where everyone has a camera. There was not one police photograph, not of skid marks in the road. No physical or forensic evidence was preserved. The cars weren't impounded. This is all directly contrary to good police practices and the Coyman's own law enforcement manual. There's no question that this stuff doesn't happen, and this similar type of stuff has been held to be intentional in other cases. What's your allegation concerning the motive of these? No, you wait. What's your allegation concerning a motive here? I mean, it appears that this driver, you know, had been town drunk is too strong a word, but he was, you know, not a model of sobriety in town, and he also had brushes with the law. So what's your theory and your complaint as to motive here? I'm sorry for interrupting you earlier. Please, look, you don't have to do that. I'm sorry for jumping on you. The theory is that this was a local boy that was very politically connected. The Sycamore Club recognized that a dram shot was right next to where this accident occurred. Right next to where this accident occurred is a dram shot, and Mr. Hagan, the offending driver, is a member of the club, and that club hosts an annual benefit for his father. Mr. Hagan was known to local law enforcement and had a reputation for excessive alcohol consumption. So how does this happen? How do we have a false name on a police report, no evidentiary information whatsoever to verify what happened? We reach out to find out information from the witness. We find out he didn't witness it, and Ms. Kern got that from calling a home that's near the accident site and spoke to the homeowners, Ellie Goodman and her husband, and they said, no, Mr. Bywater, he didn't see the accident. He was with us. This is a false statement on a filed police report. It's deeply troubling, but that in conjunction with a total lack of evidence, the total lack of evidence plausibly alleges, and there's more. Officer Ford lied when she reached out to the plaintiff. Officer Ford lied to her about how the accident happened. She said that Riley was unconscious, and we know from the first responders' reports that he was not. He lied about the weather, too. She spoke to police chief Contento, and he lied to her and said he wasn't at the scene, and he never would respond to her phone calls until she met with Sheriff Apple. Mr. Nelson, we have these allegations in your papers as well, and you have reserved two minutes for rebuttal. I think we should hear from Ms. Peck. Thank you. Ms. Peck. Good morning, Your Honors. My name is Crystal Peck with Bailey Johnson and Peck. I represent the appellees in this matter. I think that Judge Carney actually put it very, very well, framed the issue very well, because this is not a novel issue. The question that the appellant is asking this court to decide is whether there is a constitutionally, you know, protected due process right in a police investigation, and this has been litigated a number of times at the appellate level, at the United States Supreme Court, at the district courts. Ms. Peck, though, Mr. Nelson would say that in 2018, in connection with this enactment, the legislature, the governor, as reflected in the legislative history, the language was particularly strong that further measures had to be taken to impose an obligation on police investigators, particularly in the sobriety test, and if the sobriety test request was declined, to note that in the police report. I mean, the description here of what the police didn't do is really jaw-dropping, and I'm wondering whether this doesn't maybe surpass our prior cases, which by and large were enactment, and get to the point where there is a constitutional entitlement to what Ms. Kern is claiming. Why isn't that correct analysis? Part of the reason, Judge, is because of the fact that there's still discretion. There's inherent discretion, and when a police officer arrives at a motor vehicle accident, they are going to take in everything that's happening, particularly if they did not witness that accident, and then they have to make a determination as to whether there's reasonable grounds to believe whether there was a serious traffic violation. That determination is just set aside from the fact that there also has to be a determination as to whether there was a serious physical injury, and in some cases, that might be very apparent, but in other cases, it may not be. The statute defines serious physical injury as including impairment of a bodily organ. A victim could say that they have a headache, and then the next day... You know, ma'am, that's all nice in the sense that it's a kind of a generic analysis of the statute, but that doesn't engage the facts here, where, you know, I'm not a fact finder, but I look at these allegations, and they reek of cover-up. I understand that based on how it is... How is it reasonable not to do a sobriety test? How is it reasonable to falsify a police report? How is it reasonable not to identify key witnesses in a fatal one-car motorcycle collision? I don't get that. For the field sobriety test, it's reasonable because there wasn't reasonable grounds to a serious violation of the traffic law, and I understand that we are at a motion-to-dismiss stage, but the officers did make an assessment as to whether there was alcohol involved. They did consider that when they approached and looked at this scene. We're not at that point in this litigation. How did they do that? They approached him. The law says that there needs to be a breath test. There was no indicia of alcohol. Did the cops know he was coming out of a bar? But there's no evidence he was coming out of a bar. That is just speculation, and that's the problem with this case, is that the appellant would have the officers, police officers, make determinations based on someone's reputation in the community, based on their prior bad acts, and based on a presumption that they could have been coming from a bar when there was no one that they actually were. The falsification on the police report, that was corrected. There was an amendment that was issued. It was part of the plaintiff's complaint. The evidence that they are concerned about, the witnesses, whether he was awake at the scene or not, or conscious at the scene or not, this is all evidence they've been able to get to discern themselves as well, which is also why their backwards-looking claim should not be allowed to be permitted. Let me ask, let me interrupt for a second to ask, so if there's no constitutional issue here, if there's no entitlement under the state statute to a better investigation with sobriety and test and so on, are there state remedies available to Ms. Kern for, if we take the allegations that face value is true, you know, there was a grossly negligent investigation potentially, and potential inaccuracies in the report, a failure to, you know, look at the skid marks and to just investigate further the damage to the car and so on. So what remedies are available to Ms. Kern if she were able to prove everything that she has alleged here? So in order to be able to bring, say, a civil cause of action under state law, they would have to show a special duty, essentially that the officers owed a special duty from her son to perform this investigation. So doesn't this statute create such a special duty? I mean, the legislature talked about the importance of protecting people from drunk drivers. Why doesn't that create Ms. Kern, as a representative of her son's estate, a proper plaintiff for claiming special duty and holding the police to account? Because it goes back to the benefit being to the public as a whole, not to the individual. So this statute, and I think it is clear from the justification, does provide a greater mechanism for enforcing DWI laws. But it doesn't say that it is a greater mechanism for civil remedies, for victims or the families of victims for those laws. And if the legislature wanted to do that, they could have. Let me ask you this. Let me ask you this. If the officers had done no investigation worthy of the name, had done no investigation at all, you know, just they saw a body on the up through in the gun, he took it to the morgue, took it to the hospital, wherever, would she have with the state have a claim? Again, the question would come down to whether there is a special duty owed to the to the specific victim. And if there's not a special duty, you know, unfortunately, she would not have a claim. And if this was truly mandatory, the police did under under a regime that's framed by this amended statute, we're talking about the you're saying no claim? I Well, I just, if the police did nothing or here, because I disagree that the police did nothing here. Hypothetically, hypothetically, hypothetically, if the police did not investigate at all, I would say that she would have to show a special duty. I don't think I honestly, I don't know, I would have to look at that further. But I said she'd have to show a special duty. Well, she's a member of her family has been killed. And and the raison d'etre of the police department is to investigate incidents something like such as that. Why isn't that a duty? That situation comes up as well, when you're looking at domestic violence, and you're looking at restraining. I'm not I'm not interested right now in domestic violence. I'm interested in a case where the cops do nothing. But it's a similar analysis. Because if a police officer is aware that there's a restraining order out there against someone who is shown violent tendencies towards, say, their wife, and they don't arrest that person for violating it, it does not automatically create a cause of action without showing other indicia that there was a special relationship between the police and or the government and the victim. And it's same analysis here. This benefit that is conferred by the amendment is conferred to the public as a whole, it is not specific to the families or to civil rights or to civil remedies for those families. Could you take a minute, please, and address the access to the courts claim that backward looking access to the courts, which we have never actually recognized, but have alluded to and it's applying to demanding a standard to require that all access be foreclosed. And he says that, you know, given the inaccuracies here and the failure to test that her ability to pursue rightful compensation to the damage suffered with the death of her son has been actually functionally entirely foreclosed. What's your response? I think that these types of claims have to have very strict requirements and limitations on them, which the courts have generally required, which is where you get that completely foreclosed or requiring the malicious element to it. With respect to this, I'm sorry, just when you talk about the completely foreclosed standard, one of the things I'm interested in is the Supreme Court's discussion of what this claim looks like. And they describe it as backward, looking backward to a time when specific litigation ended poorly or could not have commenced or could have produced a remedy subsequently unobtainable. I gather that the completely foreclosed standard, as you've described it in your briefs, just eliminates the ended poorly prong of the Supreme Court's description of the claim and says you have to have been precluded from commencing it in the first place. Am I misunderstanding that? Well, from the cases that I've looked at talking about the completely foreclosed, I would say something, yes, I think that's generally accurate. What they're looking at is the remedy being, from what I understand and interpret it, it's the remedy being completely foreclosed. So, for example, here, you have a situation where Ms. Kern has brought a Dram Shop Act claim against the Sycamore Club and a wrongful death claim against Mr. Hagan. And those claims and the remedies that may be available to her are not completely foreclosed. I understand that there was not a field sobriety test here. But just because if there had been, there's no saying that she would have the evidence to be able to pursue those claims. Let me just loop back. I understand your argument about completely foreclosed. I want to understand how that relates to the U.S. Supreme Court's description that includes ending poorly. Contemplates litigation that is commenced, but because of the inadequate investigation or whatever, the access is functionally denied because you can't really do much with it. Are you taking the position that I'm wrong to exist, or are you relying solely on lower court decisions to get there? No, I'm not taking the position that you're wrong. Cases that I've looked at discussing that further seem to be talking about the do not have the evidence or the plaintiff would not have the evidence they need to be able to prosecute the action and get the remedy they required. I think this is exactly the allegation here. Isn't that exactly what the allegation is here? It is the allegation here. But the problem with that is that the evidence is available. So there have been. What do you mean the evidence is available? How is the evidence available? The field sobriety test is one aspect of this, and they're not available. They didn't take it. They didn't take the test. They didn't run the test. It's also pure speculation whether a Mr. Hagan was actually intoxicated or whether he would even consented to it. Then it's then it ends up on an incident report. And it's a presumption in a criminal proceeding, but not necessarily in a civil proceeding. As to guilt, it doesn't actually affect the remedy that they may be seeking. What do you understand completely foreclosed to me? My understanding of completely foreclosed is that they are not able to get the remedies that they would otherwise be available to get. You may not able to state a claim or not able to prove a claim. I think that the courts have interpreted it both ways. To be honest, I think I've seen I claim. So you would say that authority. So you're completely foreclosed when evidence central to proof of your claim has been improperly concealed. Would you concede that? I would say maliciously concealed, not improperly because... Maliciously concealed. I'll accept that. So if critical evidence has been maliciously concealed, you would concede that states a backward looking access claim, would you not? I think that that is what the courts have said. To render hollow his right to seek redress is what this court has said as well. If the official misconduct was so severe to render hollow, the redress... Don't we need a record here to determine that? To know what the police actually did? But the fact is, is that the failure, and I understand how this sounds, but the way the law has been interpreted is that the failure to gather evidence does not rise to the same level as destruction or maliciously interfering with the ability of a plaintiff to be able to present their case. This is not a situation... You got to concede that the facts here look suspicious, don't they? You got a dead body on the street in front of a dram shop. You got no sobriety tests. You got no a police action that rises to the dignity of investigation. You've got allegations and the police reports that are demonstrably false, et cetera, et cetera. Doesn't this sound fishy to you? I don't miss. I would not agree that it sounds fishy. There were investigative measures. Yes, there were investigative measures that were taken. There were witnesses that were spoken to, there was follow-up, and there were amended police reports that were issued, all of which were provided to Ms. Kern. Her biggest complaint, at least from how I've been able to see this in the complaint that was commenced, was that the police failed to collect physical evidence. They failed to take a picture of the skid marks. They failed to impound the car. Those failures do not rise to a constitutional violation. Aren't those pretty big failures in a case where somebody was killed? They still do not rise to the level, the sufficiency of the police investigation. If we are at the point where that's going to now create a constitutional protected interest or violation, we are opening up every single police investigation to a certain level of scrutiny as to whether the actions the police are taking are justified or not. Thank you, Mr. Peck. We've kept you well past your time. I share your... Go ahead, never mind. Judge Parker, you want to finish? I'm finished. All right, Ms. Peck, we kept you past your time. Mr. Nelson, you have a few minutes of rebuttal. Thank you so much, Your Honors. The unfairness of the complete foreclosure standard is, I submit, made clear by the district court's own decision, where he dismissed plaintiff's cause of action while also acknowledging that defendant's conduct may impair Kern's ability to reconstruct the accident and prove Hagen responsible and succeed on her state law causes of action. He recognized the plaintiff's problem. If you apply Harberry, Christopher versus Harberry, this case fits squarely into a backwards-looking right of access. Mr. Nelson, did your client have any remedies under state law against the police? No, no remedies. As Counselor Peck advised, that's why it's so important for there to be constitutional protection here. I mean, that's the heart of the issue here, is there needs to be constitutional protection. And getting back to the due process, right, to the mandatory testing, there also... And in terms of whether there was reasonable grounds to believe there was traffic violation, number one, the reasonable grounds does not make it discretionary, as this court has found in Sealed versus Sealed and the Knapp case. All the time, there are benefits that are found to be enforceable where a state officer or a local officer has to make an initial finding. That's not an issue. That's good. There's good law on that. Mr. Nelson, can I ask you, in the state law criminal proceedings, does it ever come up as to whether reasonable grounds is a question of law or a question of fact? I think it's an object... I think we have to plausibly allege the reasonable grounds. I think we have plausibly alleged it, and it will be our duty to prove the reasonable grounds, that there were objectively reasonable grounds. But here, the accident occurred adjacent to a person... Can you say adjacent to? It was down the road at an intersection of two other roads, wasn't it? No. That's not true. The property of the Dram Shop is adjacent to the roadways. Maybe the property that the Dram Shop owns, that the club owns is adjacent, but the actual exit from the hotel or the club is down the road a bit, isn't it? You come out of the club, you make a left on the Tompkins, and then there's a stop sign at the intersection where the accident occurred. And a person leaving the Dram Shop had the duty to stop at that stop sign and yield to people traveling on Route 143, where Riley was killed. How have you plausibly alleged that Higgins was coming out of the Dram Shop? Okay. The proximity. It occurred. Mr. Higgins is a member of the Dram Shop. His family has ties to the Dram Shop. He had no other reason to be in the area. This is upstate New York, where things are located miles and miles from each other. Why was he in that area? The location of the accident was at the intersection, where if he had left the Dram Shop, he had violated the vehicle and traffic law and triggered the duty. All right. Thank you. Thank you very much. I think we have your arguments and we have your papers, which we'll review carefully. We will reserve decision. All right. Thank you so much, Your Honors. Thank you both. Thank you, Mr. Nelson and Ms. Peck. Thank you, Judge. Thank you both. Well argued. Thank you.